NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
GEORGIA ANN RYDER-DIEUJUSTE,       :
                                   :
         Plaintiff,                :
                                   :
         -v-                       :    Civil Action No. 03-3271 (JAP)
                                   :
DHL WORLDWIDE EXPRESS, INC.        :
a Delaware Corporation,            :    **OPINION**
                                   :
         Defendant.                :
_____:

APPEARANCES

**ZATUCHNI & ASSOCIATES, LLC**
David Zatuchni, Esq.
2 Research Way, 3rd Floor East
Princeton, NJ 08540
         Attorney for Plaintiff

**NIXON PEABODY LLP**
Philip M. Berkowitz, Esq.
Erika J. Duthiers, Esq.
437 Madison Avenue
New York, New York 10022
         Admitted *pro hac vice*

**LINDABURY, McCORMICK & ESTABROOK, P.C.**
Steven Backfisch, Esq.
53 Cardinal Drive
P.O. Box 2369
Westfield, NJ 07091
         Attorneys for Defendant.

PISANO, District Judge.

Plaintiff Georgia Ann Ryder-Dieujuste ("Plaintiff") has brought a single count complaint under the New Jersey Law Against Discrimination ("NJLAD") against her former employer, DHL Worldwide Express, Inc. ("Defendant" or "DHL"), alleging that DHL failed to accommodate her disability.  Before the Court is Defendant's motion for summary judgment.  The Court has jurisdiction under 28 U.S.C. § 1332, and considers the arguments set forth by counsel in their briefs and at oral argument, held on May 23, 2005.  For the reasons explained below, the Defendant's motion for summary judgment is denied.

**I.      FACTS**

The material, undisputed facts are as follows.  Beginning in 1980, Plaintiff worked for DHL for approximately twenty-two years as a receptionist; her job title was later formally changed to "station assistant."  (Plaintiff's Statement of Material Facts ("Pl. Facts"), p.3).  At the time she resigned in May 2002, she reported to Lennie Jensen ("Jensen"), supervisor of customer service, and Al Cajide ("Cajide"), Station Manager of the Newark, New Jersey location.  (Pl. Facts, p.3-4).  In her capacity as "station assistant," Plaintiff worked at the reception desk from 8:00 a.m. to 4:45 p.m., performing various customer service and administrative tasks.  (Defendant's Concise Statement of Material Facts ("Def. Facts"), p.2 at ¶3-4).  Plaintiff spent "most of the day" answering the phones, taking messages and routing phone calls.  (Dieujuste Dep., 144:11-21).[1]  She also handled customer intakes, and her job description detailed various

---

[1] Plaintiff argues that DHL presents her deposition testimony regarding working the phones "most of the day" out of context.  In making that argument, however, Plaintiff herself presents the statement out of context.  Plaintiff would have the Court believe that she was only describing how often the phone rang.  In fact, Plaintiff was describing both - how much time she spent with the phones and how often they rang - a very simple observation indeed, given that it

other responsibilities she had around the office. (Pl. Facts, p.4-7).

Plaintiff started having difficulties with her health in October 2001. (Pl. Facts, p.9). She continued working, but experienced a climax of symptoms in late March 2002. (*Id.*). She had problems with her sight, experienced weight loss, and felt very weak. (*Id.*). She was out sick during the last week of March and was diagnosed with type II diabetes. (*Id.* at p.10-11). Plaintiff's treating physician, Dr. Burma Cavanaugh, placed Plaintiff on insulin and recommended that she eat at 8:00 a.m., 1:00 p.m., and 5:30 p.m., and that she rest for the remainder of the night. (*Id.* at p.11).

In January of 2002, DHL planned to implement changes as part of a company-wide effort to improve efficiency and reduce costs. (Def. Facts, p.3 at ¶8). Plaintiff was aware of these plans and suspected that she could be downsized. (*Id.*, p.4 at ¶12). In April, after Plaintiff returned from her sick leave, Cajide convened a meeting during which he informed the customer service representatives, including Plaintiff, that the company would be downsizing, but rather than fire anyone, DHL would reduce all employees' shifts by approximately one hour. (*Id.*, p.3 at ¶10, p.4-5 at ¶¶14-15). Also, in light of their cost-cutting efforts, DHL ordered an automated telephone system to be installed on April 26. (*Id.*, p.4 at ¶10, p.5 at ¶16). DHL therefore determined that the automated system eliminated the need for Plaintiff's position. (*Id.*, p.5 at ¶17).

At this point, numerous facts appear to be in dispute. At around the time DHL determined that Plaintiff's job functions would be eliminated by the automated telephone system, one of the "undeliverables" customer service representatives, Janel Bakserville, had informed the

---

was Plaintiff's job, as a receptionist, to answer the phone.

company she was leaving to go back to school. (Def. Facts, p.6 at ¶22). Instead of terminating Plaintiff, Jensen decided to offer Plaintiff Ms. Baskerville's position, which required a 2:00 pm to 10:00 pm shift. (*Id.*, p.6 at ¶21, p.7 at ¶24). Cajide and Jensen held a meeting with Plaintiff during the third week of April during which, according to Jensen, she offered Plaintiff Ms. Baskerville's position. (*Id.*, p.7 at ¶23). Upon Plaintiff's objection to the later shift, Jensen and Cajide agreed to offer her a 12:00 pm to 8:00 pm shift. (Def. Facts, p.10 at n.1). Plaintiff again refused, and DHL further accommodated her by moving the shift to 11:00 am to 7:00 pm. (*Id.*). Finally, Plaintiff refused that job because with her bus schedule, she would still be getting home too late. (Def. Facts, p.10 at ¶39, n.1). DHL suggests that Jensen and Cajide were not aware of Plaintiff's diabetes at the time of the first April meeting. (*Id.*, p.8 at ¶¶29-30). They knew she had been sick in late March, but her doctor's notes did not mention diabetes and did not place Plaintiff under any medical restrictions. (*Id.*).

 Plaintiff's version of the facts is remarkably different. In direct contradiction to DHL's factual assertions, Plaintiff testified at her deposition that she informed Jensen and Cajide about her diabetes shortly after her return in early April. (Dieujuste Dep., 144:11-21). Plaintiff also testified that at the meeting in the third week of April, Plaintiff was only told that her shift was being changed to 11:00 am to 7:00 pm. (Pl. Facts, p.13). There was no mention of a 2:00 pm to 10:00 pm shift. Her bosses did not inform her that her position as station assistant was being eliminated, or that she would be performing different responsibilities as an "undeliverables" customer service representative. (*Id.*). Plaintiff responded that she was under medical care and would have to talk to her doctor. (*Id.*, p.15). She returned with the aforementioned May 6 doctor's note which stated: "patient requires daytime work hours to allow her to adjust her meals

4

and rest periods. A change to evening hours could jeopardize her health." (Affirmation of Philip Berkowitz, Exhibit 8). DHL did not believe that Dr. Cavanaugh's May 6 note regarding Plaintiff's inability to work evening hours restricted her from working 11:00 am to 7:00 pm. (*Id.*, p.9 at ¶¶32-34).

There are also discrepancies as to what took place after Plaintiff presented Cajide and Jensen with the May 6 doctor's note. It is undisputed that Jensen and Cajide told Plaintiff she could take breaks when needed and eat at her desk in accordance with her medical needs. (Dieujuste Dep., 182:3-13). According to Plaintiff, Jensen and Cajide made it clear that Plaintiff had no alternative to the 11:00 am to 7:00 pm shift. (Jensen Dep., 51:19-53:10). Plaintiff also states that DHL made no other efforts to accommodate her. (Pl. Facts, p.22). Plaintiff asserts that she even contacted human resources manager Anthony Medaglia ("Medaglia") to address her need for an accommodation, but he suggested that she take the hours or resign. (Pl. Facts, p.23). Medaglia denied making that statement.

On or around May 13, 2002, Plaintiff went on leave and sought further medical treatment. (Pl. Facts, pp.23-24). She obtained a note from Dr. Cavanuagh indicating she was being treated for uncontrolled diabetes. (Zatuchni Cert., Exhibit L). According to DHL, when Plaintiff went on leave, her decision to accept the open position was still pending. (Def. Facts, p.11 at ¶42). While Plaintiff was on leave, DHL received two additional notes from Dr. Cavanaugh dated May 25 and May 31 diagnosing Plaintiff with anxiety and stress but clearing her to return to work in early June. (*Id.*, pp.11-12 at ¶¶44-46). On May 31, Plaintiff returned to work and submitted her resignation letter, citing health reasons. (Zatuchni Cert., Exhibit O). After being told of Plaintiff's resignation, Jensen became sad, hugged Plaintiff and cried. (Def. Facts, p.12 at ¶50).

5

DHL did not hire a new station assistant after Plaintiff resigned. (Def. Facts, p.5-6 at ¶19). However, Plaintiff and co-workers testified that Plaintiff continued to answer the phones even after installation of the automated system. (Pl. Facts, pp.27-28). Finally, it is undisputed that DHL filled Ms. Baskerville's position with a temporary employee working a 2:00 pm to 10:00 pm shift.

## II.  SUMMARY JUDGMENT STANDARD

A court shall grant summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The substantive law identifies which facts are critical or "material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On a summary judgment motion, the moving party must show, first, that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to present evidence that a genuine, fact issue compels a trial. *Id.* at 324. In so presenting, the non-moving party may not simply rest on its pleadings, but must offer admissible evidence that establishes a genuine issue of material fact, *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986), not just "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The Court must consider all facts and their logical inferences in the light most favorable to the non-moving party. *Pollock v. American Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986). The Court shall not "weigh the evidence and determine the truth of the matter," but need determine only whether a genuine issue necessitates a trial. *Anderson*, 477 U.S. at 249. If the

non-moving party fails to demonstrate proof beyond a "mere scintilla" of evidence that a genuine issue of material fact exists, then the Court must grant summary judgment. *Big Apple BMW v. BMW of N. Am.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

## III.    DISCUSSION

The NJLAD, codified at N.J.S.A. § 10:5-1 *et seq.*, prohibits "any unlawful discrimination against any person because such person is or has been at any time handicapped or any unlawful employment practice against such person, unless the nature and extent of the handicap reasonably precludes the performance of the particular employment." N.J.S.A. § 10:5-4.1. Under the New Jersey Administrative Code, the failure to offer reasonable accommodations to an otherwise qualified individual with a disability is but one form of prohibited behavior. *See* N.J. Admin. Code tit. 13, § 13-2.5 (requiring an employer to "make a reasonable accommodation to the limitations of an employee or applicant who is a person with a disability, unless the employer can demonstrate that the accommodation would impose an undue hardship"). If the employee is unable to perform the job even with the reasonable accommodation, the law does not impose a duty to accommodate. *See* N.J. Admin. Code § 13-2.8(a).

Plaintiff's claim is based on DHL's alleged failure to provide a reasonable accommodation for her diabetic condition. To make out a prima facie case for failure to accommodate, the plaintiff must offer proof that (1) plaintiff has a LAD handicap, (2) plaintiff was qualified to perform the essential functions of the job, with or without accommodation, and (3) plaintiff suffered an adverse employment action because of the handicap. *Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 150 (3d Cir. 2004) (quoting *Bosshard v. Hackensack Univ. Medical Center*, 783 A.2d 731, 739 (N.J. Super. Ct. App. Div. 2001)). The

7

Defendant concedes that, for purposes of this motion, Plaintiff's diabetic condition is a LAD handicap, in satisfaction of the first element. Defendant argues that Plaintiff cannot satisfy the second or third prongs.

The Plaintiff counters Defendant's legal arguments by raising important issues of fact that preclude summary judgment. For instance, DHL argues that the 2:00 to 10:00 p.m. timing of the shift was an "essential function" of the position labeled "undeliverable packages customer service representative," and because Plaintiff could not work evening hours under any circumstances, she wasn't otherwise qualified for the job. Plaintiff argues, however, that DHL never offered her the "undeliverables" job, but instead simply implemented the shift change as it related to her job as station assistant. So there is a factual dispute as to what job is at issue in this case. Similarly, DHL argues that Plaintiff refused to work the later shift not because of her diabetes, but because of the commuter schedule to which she had become accustomed during her long tenure at the company. Plaintiff, citing to her deposition testimony, argues vehemently that she never put her bus schedule into issue when refusing the shift change. (Pl. Facts, pp.16-18). This conflicting testimony presents the Court with another crucial factual dispute that precludes summary judgment.

Quite simply, the parties tell two completely different stories in this case. Both comport with the deposition testimony and other evidence of record. When viewed in a light most favorable to the non-movant, there are genuine issues of fact central to this dispute that preclude summary judgment.

An appropriate Order accompanies this opinion.

s/ Joel A. Pisano
JOEL A. PISANO, U.S.D.J.

Date: June 15, 2005